**Tae Sook PARK, Plaintiff–Appellant,**

v.

**Bong Kil SHIN; Mee Sook Shin, Defendants–Appellees.**

**No. 01–16805.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2002.

Filed Dec. 17, 2002.

---

Monty Agarwal, McCutchen, Doyle, Brown & Enersen, LLP, San Francisco, CA, for the plaintiff-appellant.

Marguerite E. Meade, El Cerrito, CA, for the defendants-appellees.

Before HAWKINS, GRABER, and TALLMAN, Circuit Judges.

## OPINION

GRABER, Circuit Judge.

Plaintiff Tae Sook Park brought this action against Bong Kil Shin, the Deputy Consul General of the Korean Consulate in San Francisco, and his wife, Mee Sook Shin. Plaintiff alleges several employment-related claims arising from her tenure as the Shins' domestic servant. The district court ruled that Defendants are entitled to immunity under the Vienna Convention on Consular Relations (Vienna Convention) and dismissed the action. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Bong Kil Shin is the Deputy Consul General of the Republic of Korea Consulate General in San Francisco, and Defendant Mee Sook Shin is his wife. Plaintiff Tae Sook Park is a Chinese national who began working as a domestic servant for Defendants in 1996, while Mr. Shin was stationed at the Korean Embassy in China. In February 1999, Mr. Shin was transferred to the Korean Consulate in San Francisco. Mr. Shin obtained for Plaintiff a visa to allow her to come to the United States and to continue working for Defendants.

Plaintiff worked in the United States as a domestic servant for Defendants from February 28, 1999, to October 3, 2000.

She resided in Defendants' home in San Mateo County. Plaintiff's work included cooking, cleaning, performing other household duties, and taking care of Defendants' three children. Plaintiff's duties also included preparing and serving food when Mr. Shin entertained guests on behalf of the Korean Consulate at the Shins' home. The Korean Consulate in San Francisco does not have an area in which to entertain guests and, therefore, it was customary for the Shins to entertain at their home. The guests included consuls and diplomats from other countries, members of the Korean business community, and church leaders.

On May 9, 2001, Plaintiff filed this action against Defendants, alleging federal and state statutory claims, as well as common law claims, all arising from her employment by the Shins. She alleges that, during the course of her employment with Defendants, she was not paid the minimum wage or overtime pay; that on numerous occasions Defendants did not take her to the hospital when she was ill; and that Defendants confiscated her passport.

The district court held that Defendants were entitled to consular immunity under the Vienna Convention. It then granted Defendants' motion to dismiss for lack of subject matter jurisdiction. Plaintiff brings this timely appeal.

## STANDARD OF REVIEW

■ We review de novo the district court's conclusion that consular immunity deprives it of subject matter jurisdiction over Plaintiff's claims. *Joseph v. Office of Consulate Gen. of Nig.*, 830 F.2d 1018, 1027 (9th Cir.1987). The existence of sovereign immunity and subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976 (FSIA) are questions of law that, likewise, we review de novo.

*Corzo v. Banco Cent. de Reserva del Peru*, 243 F.3d 519, 522 (9th Cir.2001).

## DISCUSSION

Defendants argue that the district court was barred from exercising jurisdiction over Plaintiff's claims for two reasons. First, they assert that they are entitled to consular immunity pursuant to the Vienna Convention. Second, they argue that they are entitled to sovereign immunity pursuant to the FSIA. We address each claim in turn.

### A. *Vienna Convention*

Article 43(1) of the Vienna Convention provides that "[c]onsular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of acts performed in the exercise of consular functions." Vienna Convention on Consular Relations, Apr. 24, 1963, art. 43(1), 21 U.S.T. 77, 104. As Deputy Consul of the Korean Consulate, Mr. Shin qualifies as a "consular officer" within the meaning of Article 43. *See id.* at 80 (art. 1(1)(d)); *id.* at 86 (art. 9(1)). Thus, he argues that he is entitled to consular immunity because the acts giving rise to Plaintiff's action were "acts performed in the exercise of consular functions." *Id.* at 104 (art. 43(1)).

■ [2] We apply a two-part test when determining whether an act was "performed in the exercise of consular functions." Under the first step, we must decide whether the functions asserted are "legitimate 'consular functions.'" *Gerritsen v. Consulado Gen. De Mex.*, 989 F.2d 340, 346 & n. 8 (9th Cir.1993) *(Gerritsen II); see also Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1517 (9th Cir. 1987) *(Gerritsen I)* (holding that, if "the acts alleged in the complaint are not consular functions ...", these acts are not

protected by consular immunity"). If the functions asserted are legitimate consular functions, we next must decide whether the acts for which the consular officer seeks immunity were " 'performed in the exercise of the consular functions' in question." *Gerritsen II*, 989 F.2d at 346.

█ In order to answer the first of these questions, we must consider the scope of "legitimate consular functions" under the Vienna Convention. Article 5 sets forth 12 specific consular functions. 21 U.S.T. at 82–84 (art. 5(a)-(*l* )). In addition, article 5 contains a "catch-all" provision defining consular functions to include "any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State or ... which are referred to in the international agreements in force between the sending State and the receiving State." *Id.* at 85 (art. 5(m)); *Gerritsen II*, 989 F.2d at 345–46.

Mr. Shin does not assert that the acts alleged by Plaintiff were performed in exercise of any of the 12 enumerated functions but, instead, relies on the catch-all provision. He asserts that, because Plaintiff provided services such as cooking and serving in connection with official Consulate events held at the Shins' home, his hiring and supervision of Plaintiff was a legitimate consular function.

In support, Mr. Shin cites *Ford v. Clement*, 834 F.Supp. 72 (S.D.N.Y.1993). In that case, a Vice Consul of the Republic of Panama sued the Consul General, who allegedly had orchestrated a campaign of harassment to force her out of the Consulate in New York. *Id.* at 73–74. The district court concluded that the Consul General's acts were performed in the exercise of the legitimate consular function of "managing and supervising the consular staff," because management and supervision of the consular staff was "fundamental to the efficient execution of all of the other consulate functions enumerated by the Vienna Convention." *Id.* at 77, 75. Mr. Shin makes an analogous argument here, namely, that his hiring and supervision of Plaintiff was fundamental to his ability to entertain official guests in his home.

Mr. Shin also argues that he could not fulfill his other functions as a consular officer as effectively if he were required to cook, clean, take care of his children, and perform the other services that Plaintiff provided for the Shin family. Although that may be true, this fact alone is insufficient to make the hiring and supervision of Plaintiff a consular function. Under this theory, any personal service (from yard work to car repair) would become a consular function because, otherwise, the consular officer would have to perform it. A direct, not an indirect, benefit to consular functions is required.[1]

Plaintiff was hired as the Shin family's *personal* domestic servant. Any labor that she performed on behalf of the Consulate was incidental to her employment as a personal servant. Several facts support this conclusion.

█ First, Mr. Shin obtained an A–3 visa for Plaintiff. Such visas are issued only for *personal* employees of consular

---

1. Mr. Shin's only support for his argument is a citation to *Tabion v. Mufti*, 73 F.3d 535, 538–39 (4th Cir.1996), for the proposition that "[d]ay-to-day living services such as ... domestic help were not meant to be treated as outside a diplomat's official functions." However, that case is distinguishable because it dealt with the Vienna Convention on Diplomatic Relations, a treaty providing almost complete immunity to diplomats. Further, the *Tabion* court was concerned with whether the act of hiring a domestic servant constituted commercial activity practiced for personal profit, something prohibited by the treaty at issue.

officers. *See* 8 U.S.C. § 1101(a)(15)(A)(iii); 8 C.F.R. § 214.1(a)(2).[2] Had she been an employee of the Consulate itself, Plaintiff would have been issued an A–2 visa. *See* Agreement Regarding the Issuance of Nonimmigrant Visas, Mar. 28, 1968, U.S.Republic of Korea, 19 U.S.T. 4789, 4803 (amended Aug. 1, 1982) (providing that A–2 visas are to be granted to foreign government employees who are not ambassadors, public ministers, career diplomatic or consular officers, or members of their immediate families); *see also* 8 U.S.C. § 1101(a)(15)(A)(ii); 8 C.F.R. § 214.1(a)(2).

Second, although the Republic of Korea paid the monthly rent on the Shins' home and reimbursed the Shins for expenses incurred when entertaining guests at their home, it was not responsible for paying Plaintiff's monthly salary, medical expenses, or travel to the United States. Instead, the Shins paid Plaintiff for her services out of their own funds.

Finally, Plaintiff allegedly worked 15 hours a day on weekdays and 13 hours a day on weekends. Because the Shins entertained visitors only "several times a month," the bulk of Plaintiff's time was not spent performing work related to official consular functions. Instead, she spent most of her time caring for the Shins' children and cooking and cleaning for the Shins themselves.

Thus, Plaintiff's work for the Consulate was merely incidental to her regular employment as the Shin family's personal domestic servant and, accordingly, Mr. Shin's hiring and supervision of her was not a consular function. The acts alleged by Plaintiff therefore were not "performed in the exercise of consular functions" for purposes of the Vienna Convention, and Mr. Shin is not entitled to consular immunity.[3]

Because Mrs. Shin's claim to immunity rests on the same grounds as that of her husband, she likewise is not entitled to consular immunity.

### B. *Foreign Sovereign Immunities Act*

■ The FSIA provides that federal courts may not exercise jurisdiction over a "foreign state" unless the action falls within one of several exceptions. 28 U.S.C. §§ 1604, 1605–1607. Mr. Shin[4] asserts that he qualifies as a "foreign state" under the FSIA and that, therefore, the statute bars this action. Plaintiff responds that the FSIA is inapplicable because Mr. Shin was not acting within the scope of his official duties when he committed the acts of which she complains. Further, Plaintiff asserts that, even if Mr. Shin could be treated as a foreign state, the FSIA would not provide him with protection because the behavior giving rise to this action was commercial in nature.[5]

---

**2.** In fact, Plaintiff's visa identified her as the "PERSONAL EMPLOYEE OF MR. SHIN."

**3.** Because we hold that Defendants' claim of consular immunity fails at step one, we need not reach the second part of the analysis.

**4.** Mrs. Shin, too, argues that she is entitled to sovereign immunity under the FSIA. However, because she is not a government official, she cannot be considered a "foreign state" for purposes of the statute. *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1106 (9th Cir.1990) (stating that the FSIA protects individuals only when they act in their official

capacities as employees of a foreign sovereign).

**5.** Plaintiff also argues that the FSIA does not apply to consular officials. Our precedents do not conclusively answer this question. *Compare Joseph*, 830 F.2d at 1021 (holding, pre-*Chuidian*, that sovereign immunity is available only to "foreign states or their instrumentalities" and not to consular officials), *with Chuidian*, 912 F.2d at 1099, 1103 (holding for the first time that individual government employees may be considered "foreign states" for purposes of the FSIA). We need not answer the question here because we con-

### 1. *Meaning of "foreign state" for purposes of the FSIA*

Individual government employees may be considered "foreign states" within the meaning of the FSIA. *Chuidian v. Philippine Nat'l Bank,* 912 F.2d 1095, 1103 (9th Cir.1990). However, not all acts undertaken by individuals are protected by the statute. To the contrary, the statute applies only when individuals act in their official capacities as employees of a foreign sovereign. *Id.* at 1099, 1103.

A number of factors are relevant in determining whether a foreign official is acting in an official capacity. "Obviously, if the officer purports to act as an individual and not as an official, a suit directed against that action is not a suit against the sovereign." *Id.* at 1106 (citation and internal quotation marks omitted). We must also consider whether an action against the foreign official is merely a disguised action against the nation that he or she represents. As we have noted, "[i]t is generally recognized that a suit against an individual acting in his official capacity is the practical equivalent of a suit against the sovereign directly." *Id.* at 1101; *see also Hilao v. Estate of Marcos (In re Estate of Marcos),* 25 F.3d 1467, 1472 (9th Cir.1994). Similarly, we ask whether an action against the official would have the effect of interfering with the sovereignty of the foreign state that employs the official. *See id.*

Mr. Shin claims that, in hiring Plaintiff, he was acting within the scope of his official duties. However, as discussed above, Mr. Shin was not acting exclusively or even primarily as an agent of the Republic of Korea when he hired Plaintiff. Instead, he hired her as a personal family

employee, paid her with family funds, and required her to perform work benefiting the Consulate only on a few days each month. In addition, Plaintiff's action is not a disguised action against the Republic of Korea. She does not object to a government policy implemented by Mr. Shin but, instead, objects to Mr. Shin's personal decisions with respect to wages and working conditions of a domestic servant of his family. Finally, an adverse judgment against Mr. Shin would in no way interfere with the sovereignty or policy-making power of the Republic of Korea.

For these reasons, Mr. Shin could not have acted within the scope of his official duties when he committed the acts alleged by Plaintiff. Therefore, he cannot qualify as a foreign state, and the FSIA does not bar the district court from exercising jurisdiction.

### 2. *"Commercial activities" exception to sovereign immunity*

Even if Mr. Shin properly could be characterized as a foreign state, he still would not be entitled to sovereign immunity. The FSIA's provision of immunity to foreign states is not absolute. Rather, the statute provides a number of limitations on immunity. The relevant limitation in this case is the "commercial activities" exception, which provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> . . . .
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United

---

clude that Mr. Shin is not entitled to immunity even if the FSIA applies to consular officials.

States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

28 U.S.C. § 1605(a)(2). Mr. Shin is not entitled to sovereign immunity because Plaintiff's action is based on his commercial activity in the United States.

 The FSIA directs courts to look to the nature of the activity in question, rather than to its purpose. *Joseph,* 830 F.2d at 1023. Even if performed with a public purpose in mind, acts by governmental entities are considered commercial in nature if the role of the sovereign is one that could be played by a private actor. *Republic of Arg. v. Weltover, Inc.,* 504 U.S. 607, 614–15, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992); *Sun v. Taiwan,* 201 F.3d 1105, 1107–08 (9th Cir.), *cert. denied,* 531 U.S. 979, 121 S.Ct. 427, 148 L.Ed.2d 435 (2000). Thus, an activity is commercial unless it is one that only a sovereign state could perform. *MOL, Inc. v. Peoples Republic of Bangl.,* 736 F.2d 1326, 1329 (9th Cir.1984). For example, "a contract to purchase military supplies, although clearly undertaken for public use, is commercial in nature and therefore subject to the commercial activity exception." *Joseph,* 830 F.2d at 1023. Similarly, the Supreme Court has held that the Argentine government's issuance of bonds in order to refinance government debt was commercial in nature because a private actor could issue bonds to refinance a debt. *Weltover,* 504 U.S. at 615, 112 S.Ct. 2160.

The act of hiring a domestic servant is not an inherently public act that only a government could perform. To the contrary, private actors commonly employ domestic servants. Further, because the nature rather than the purpose of the act in question determines whether it is a commercial activity under the FSIA, it is irrelevant that Mr. Shin hired Plaintiff in part for the purpose of providing services associated with entertaining guests of the Consulate.

The legislative history of the FSIA also supports our conclusion. The House report states that "a foreign government's ... employment or engagement of laborers, clerical staff or public relations or marketing agents ... would be among those included within the definition [of commercial activity]." H.R.Rep. No. 94–1487, at 16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615.

Mr. Shin attempts to complicate this easy question by arguing that only a government official could procure the A–3 visa that permitted Plaintiff to enter the United States and to work for the Shin family. However, private foreign nationals and American citizens living abroad may bring personal domestic employees into the United States under a B 1 visa. *See* U.S. State Dep't, Foreign Affairs Manual, 9 F.A.M. 41.31, at N6, N6.3–1, N6.3–3. Further, by relying on the type of visa issued to Plaintiff, Mr. Shin defines the nature of the activity in question far too narrowly. The Supreme Court in *Weltover* did not ask whether a private actor could issue government bonds or refinance public debt. *Weltover,* 504 U.S. at 615–16, 112 S.Ct. 2160. Instead, it asked only whether a private party could issue bonds to refinance its own debt. *Id.*

In short, the hiring and payment of Plaintiff was a commercial activity for purposes of the FSIA. Accordingly, Mr. Shin is not entitled to sovereign immunity even if he is correct that he must be treated as a foreign state.

## CONCLUSION

We hold that Defendants are not entitled to consular immunity. Defendants'

hiring and supervision of Plaintiff was not a consular function because Plaintiff was employed primarily as a personal domestic servant of the Shin family. Further, the employment-related acts allegedly committed by Defendants were not performed in the exercise of a consular function. Accordingly, the Vienna Convention does not provide them with immunity.

Nor are Defendants entitled to sovereign immunity under the FSIA. Mrs. Shin is not a government official and, therefore, not a "foreign state" for purposes of the FSIA. Mr. Shin was not acting within the scope of his official duties by employing Plaintiff. Further, even if Mr. Shin could be considered a foreign state, his behavior falls within the FSIA's "commercial activities" exception to sovereign immunity.

REVERSED and REMANDED.