**ORDERED** that the child support provision of the Territorial Court's sentence is **VACATED.**

**Dr. S. PRADHAN, et al.**

v.

**Salem A. AL–SABAH, Ambassador, Embassy of Kuwait, et al.**

**No. CIV.A.DKC 2003–0228.**

United States District Court, D. Maryland.

Jan. 5, 2004.

S. Pradhan and S.N. Pradhan, Bethesda, MD, pro se, for Plaintiff.

John Wadie Hermina, pro se, Hermina Law Group, Laurel, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution are the following motions: (1) Defendants' motion to dismiss, or in the alternative, for summary judgment and (2) Plaintiffs' motion for summary judgment. The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the court will (1) deny in part and grant in part Defendants' motion to dismiss, or for summary judgment, and (2) deny Plaintiffs' motion for summary judgment.

## I. Background

The following facts have been alleged by Plaintiffs or are uncontroverted. On September 1, 1998, Plaintiffs entered into a lease agreement with Mr. Sameeh J.A. Hayat for the rental of residential property they owned in Bethesda, Maryland. At all times relevant to this action, Mr. Hayat was the Second Secretary of the Embassy of the State of Kuwait. The lease agreement contained, by addendum, a diplomatic transfer clause, which required Mr. Hayat to provide sixty days written notice in the event that he was transferred out of

the Washington, DC area for purposes of his employment. On September 28, 2001, another addendum to the lease was executed, extending the lease agreement for one year. The addendum appears on "Embassy of the State of Kuwait" letterhead, and is signed by Mr. Pradhan and Salem A. Al–Sabah, Ambassador to the Embassy of Kuwait. Mr. Hayat's rental of the property continued for a number of years for his personal use and without notable problem. However, when Plaintiffs did not receive Mr. Hayat's rent for the month of July, they commenced a civil suit on July 10, 2002 in the District Court of Maryland, in Rockville, Maryland. Plaintiffs sought a collection of rent and possession of property and a trial was set for July 21, 2002. On July 30, Mr. Hayat vacated the rental property without notification and failed to return the house keys to Plaintiffs. Mrs. Pradhan, accompanied by her brother, appeared for trial and attorney Hermina appeared on behalf of himself and Defendant Al–Sabah. Mr. John H. Hermina also returned the missing house key to Mrs. Pradhan.

According to Plaintiffs, Mr. Hayat left the rental property in extensively damaged condition. Plaintiffs also allege that Attorney Hermina visited the rental property on July 31 to witness its condition. Plaintiff sent an estimate of repairs to Mr. Hermina and the Embassy of Kuwait and, upon receiving no response, filed a claim in the District Court of Maryland on November 18, 2002. The complaint names as Defendants Salem A. Al–Sabah, Ambassador to the Embassy of Kuwait and John W. Hermina, Counsel for the Embassy of Kuwait. Plaintiffs seek $13,038.39 for unpaid rent, late fees and property damage.

On January 24, 2003, Defendants removed this matter to federal court pursuant to 28 U.S.C. § 1441(d). Defendants assert that Ambassador Al–Sabah is a for-eign state under 28 U.S.C. 1603(a) and is therefore entitled to remove all claims against him to federal district court. On March 19, 2003, Defendants filed a motion to dismiss, or in the alternative, for summary judgment arguing that (1) attorney Hermina is not a proper party, (2) the court lacks subject matter jurisdiction because Defendant Al–Sabah is entitled to immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.* ("FSIA"), and (3) the court lacks personal jurisdiction over Defendant Al–Sabah because he was not properly served pursuant to 28 U.S.C. § 1608. Plaintiffs, in response, filed a motion for summary judgment on April 10, 2003 and an opposition to Defendants' motion to dismiss on May 13, 2003.

## II.  Analysis

### A.  Claims Against Defendant Hermina

■ Plaintiffs have named attorney Hermina as a defendant in this case. While it is not clear what claim, if any, Plaintiffs have stated against Defendant Hermina, it appears that any alleged wrongdoing is related to the actions he took on behalf of his client, the Embassy of Kuwait and its employees, Mr. Al–Sabah and Mr. Hayat. It is well-established, however, that attorneys "may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation." *See Noble v. Bruce,* 349 Md. 730, 757–758, 709 A.2d 1264, 1278 (Md.1998). Plaintiffs have failed to allege any facts that support a claim against Defendant Hermina for actions taken either in his professional or individual capacity; nor do they respond to or challenge Defendant Hermina's protest to being named a party in this suit. Thus, Plaintiffs have failed to state a claim against Defendant Hermina upon which

relief may be granted and all claims against him will be dismissed.

## B. Claims Against Defendant Al–Sabah

### 1. Foreign Sovereign Immunities Act

■ With the enactment of the FSIA in 1976, Congress created a comprehensive legislative framework governing "claims of immunity in every civil action against a foreign state or its political subdivisions, agencies, or instrumentalities." *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 488, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Generally speaking, the FSIA provides that federal court may not exercise jurisdiction over a "foreign state" unless the action falls within one of several exceptions. *See* 28 U.S.C. §§ 1604, 1605–1607. Once a foreign state defendant claims immunity under the FSIA, the plaintiff bears the initial burden of producing evidence that the foreign state is not entitled to immunity—that is, that one of the FSIA exceptions applies. *See Meadows v. Dominican Republic,* 817 F.2d 517, 522–23 (9th Cir.1987).[1] The burden then shifts to the defendant to prove by a preponderance of the evidence that the exception does not apply. *See Siderman de Blake, v. Republic of Argentina,* 965 F.2d 699, 707–708 (9th Cir.1992), *cert denied* 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993); *Gerding v. Republic of France,* 943 F.2d 521, 525 (4th Cir.1991) (party claiming immunity under FSIA carries ultimate burden of proof and persuasion) (citing H.R.Rep. No. 1487, 94th Cong., 2d Sess. 1, 17, (1976), *reprinted in* 1976 U.S.Code Cong. & Admin. News 6604, 6616). In this case, Defendant Al–Sabah argues that he is immune from suit as a foreign state under the FSIA and the court therefore lacks jurisdiction over claims against him. In asserting their claim, Plaintiffs provide evidence that, even if considered a foreign state under the FSIA, Defendant Al–Sabah's actions fall within the commercial activity exception to immunity.

### a. Foreign State Under the FSIA

■ An individual acting in his official capacity on behalf of a foreign sovereign may be considered a "foreign state" within the meaning of the FSIA. *See Park v. Shin,* 313 F.3d 1138, 1144 (9th Cir.2002). The court will look to a number of factors when determining whether a foreign official is acting in an official capacity, including whether the officer purported to act as an official and not as an individual, whether the action against the officer is a disguised claim against the nation he represents, or whether the action has the effect of interfering with the foreign state's sovereignty. *Id.* at 1144 (citing *Chuidian v. Philippine Nat'l Bank,* 912 F.2d 1095, 1103 (9th Cir.1990)).

■ The parties do not dispute that Defendant was acting in his official capacity as Ambassador to the state of Kuwait and the record does not support a finding to the contrary. The addendum to the lease agreement was signed by the Ambassador under his official title and printed on Embassy of Kuwait letterhead. Plaintiffs have also provided a declaration of their leasing agent, Barbara C. Casey, affirming that at least one month's rent was paid with a check written by the Embassy of

---

1. Unless one of these exceptions applies, the federal courts lack both subject matter, *see* 28 U.S.C. § 1330(a), and personal jurisdiction, *see id.* § 1330(b). Under § 1330(b), personal jurisdiction depends not only on the applicability of an exception to sovereign immunity but also on service of process in compliance with 28 U.S.C. § 1608. Thus, the court will first determine whether Defendants are entitled to an exception and second whether service upon Defendants was proper.

the State of Kuwait. *See* paper no. 11, ex. 4. Ms. Casey also affirms that the property was leased to Mr. Hayat and the Embassy of the State of Kuwait. *Id.* Accordingly, the court finds that Defendant Al–Sabah was acting in his official capacity when he signed the addendum extending Mr. Hayat's lease agreement.

### b. Commercial Activities Exception

■■ Immunity under the FSIA is not absolute but subject to a number of limitations. The relevant exception in this case is the commercial activities exception, which provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United state or of the State in any case -
>
> > (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Commercial activity "means either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). Whether an act or activity is commercial depends entirely on the act's nature and not its purpose. *Id.* Regardless of the motive or effect, an act is commercial if it is of a type which a private party might engage. *See MCI Telecommunications Corp. v. Alhadhood,* 82 F.3d 658, 662 (5th Cir.1996); *see also Park,* 313 F.3d at 1145 ("Even if performed with a public purpose in mind, acts by governmental entities are considered commercial in nature if the role

of the sovereign is one that could be played by a private actor.").

■ The act at issue here, signing an addendum for an extension of a lease agreement, is certainly an act a private actor would take and not an inherently public act reserved only for a government. *See Fagot Rodriguez v. Republic of Costa Rica,* 139 F.Supp.2d 173, 192 (D.P.R.2001) ("[E]xecution of a lease agreement and formation of a landlord-tenant relationship were undoubtedly commercial activities."). In fact, the Ninth Circuit has ruled on an almost identical issue. *See Joseph v. Office of Consulate General of Nigeria,* 830 F.2d 1018 (9th Cir.1987). In *Joseph,* the Consulate General of Nigeria entered into a lease agreement for a residential property to secure housing for its employees. The court held:

> There is nothing about the lease agreement, or the alleged breach of that agreement, which distinguishes the transaction from an ordinary private commercial transaction, aside from the fact that the Consulate General of Nigeria was the tenant. Neither the Consulate's rental agreement, nor its alleged breach of that agreement, constitute sovereign activities.

*Id.* at 1024. An almost identical situation applies in this case, except that this agreement involves a foreign state's Embassy and not its office of the Consulate General. As in *Joseph,* there is nothing peculiar about the lease agreement or addendum that Defendant Al–Sabah signed to extend the terms of Mr. Hayat's lease for one year. Moreover, because it is the nature of entering into a lease agreement that determines whether an exception to immunity exists, the purpose behind Al–Sabah's signing the addendum is irrelevant. Based on the record before the court, Defendant Al–Sabah's actions fall within the commercial exception.

Plaintiffs having carried their burden, Defendants must now prove Al–Sabah's entitlement to immunity by a preponderance of the evidence. In their reply, however, Defendants fail to prove, or for that matter even allege, that the acts taken by the Ambassador do not fall within the commercial activities exception. Instead, Defendants simply maintain that Plaintiffs have failed to state a claim or plead any facts establishing liability. Without more, Defendants have failed to meet their burden of proving immunity as necessary to establish that this court lacks subject matter jurisdiction over these claims. Moreover, even had Defendants argued as such, the facts of this case simply do not permit a finding that the commercial exception does not apply. Defendant Al–Sabah is therefore not entitled to claim immunity under the FSIA.

### 2. Improper Service

Defendants also argue that dismissal is proper because Defendant Al–Sabah was not served as required under § 1608(b)(2). According to Defendants, "[o]n the face of the Complaint, it is clear that the plaintiff has failed to comply with the law and the Complaint should be dismissed on that basis." Paper no. 6, at 3. Like much of their arguments, Defendants' assertion is conclusory and completely unsupported by facts or law.

Service upon "an agency or instrumentality of a foreign state," such as Ambassador Al–Sabah, is governed by 28 U.S.C. § 1608(b). Section 1608(b)(2) provides generally that service upon instrumentalities of foreign states may be made by delivering a copy of the summons and complaint to an officer, or a managing or general agent. See Velidor v. L/P/G Benghazi, 653 F.2d 812, 821 (3rd Cir.1981). Although this court is unable to locate case law from this court or the Fourth Circuit

addressing this provision, numerous circuits have rejected Defendants' position that failure to comply strictly with § 1608(b) demands dismissal. See e.g., Magness v. Russian Federation, 247 F.3d 609, 616–617 (5th Cir.2001) (agreeing with the Third, Sixth, Ninth, Eleventh, and D.C. Circuits, that substantial compliance with section 1608(b) is sufficient so long as the defendants have actual notice of the suit).

In Velidor, the third circuit explained that Congress did not intend to make "service on foreign instrumentalities a rigid, technical, or cumbersome procedure, [but] sought to facilitate the ability of private plaintiffs to serve foreign entities. In addition, Congress wished to insure that the sovereign owner would receive actual notice." Id. (citing H.R.Rep. No. 94–1487, at 23–24). The court concluded that actual notice was the determining factor. Similarly, other courts have granted plaintiffs a period of time to cure any defects in service when defendant had actual notice of the suit against him and would suffer "little tangible prejudice." Lippus v. Dahlgren Mfg. Co., 644 F.Supp. 1473, 1479 (E.D.N.Y. 1986) (granting thirty days to cure service); see also Sherer v. Construcciones Aeronauticas, S.A., 987 F.2d 1246, 1248–49 (6th Cir.1993) (substantial compliance is sufficient when defendant had actual notice, showed no prejudice and had participated in case from beginning); Magnus Electronics, Inc. v. Royal Bank of Canada, 620 F.Supp. 387, 389 (N.D.Ill.1985), aff'd in part, rev'd in part, 830 F.2d 1396 (7th Cir.1987) (service defect was curable).

In the present case, Plaintiffs' complaint indicates that service on Defendants was completed by certified mail. There is no record that Defendants were served with a copy of the complaint and court summons as required under § 1608(b). However, given that Defen-

dants removed the action and have participated fully in the litigation of this suit, Defendants clearly had actual notice of Plaintiffs' suit. In fact, Defendants have been fully informed of, and involved with, the issues and claims in this case such that no prejudice would result if an extension is granted to cure any defects in service. Nor have Defendants alleged any such hardship. Therefore, any deficiency in service can be easily cured, without prejudice, by properly serving a summons and complaint. Plaintiffs are given thirty days from the date of this decision to effect service under § 1608(b) of the FSIA.

### 3. Timeliness of Plaintiffs' Response to Motion to Dismiss

▮ Defendants have also moved for judgment in their favor on the ground that Plaintiffs failed to file a timely response to their motion to dismiss or for summary judgment. Defendants' motion was filed on March 19, 2003. On March 24, 2003, Plaintiffs received notice from the court that a dispositive motion was filed by Defendants, to which they had 17 days from the date of the letter to file a response. *See* Local Rule 105.2.a (providing 14 days in which to file oppositions to motions); Fed.R.Civ.P. 6(e) (allowing 3 additional days after service by mail). Plaintiffs did not file a response to Defendants' motion to dismiss until May 13, 2003, fifty days later. Plaintiffs did, however, file a motion for summary judgment on April 10, 2003, seventeen days after receiving the court's notice.

Although Plaintiffs' opposition to Defendants' motion to dismiss was not timely, the circumstances of this case do not support as harsh a sanction as dismissal. Despite Plaintiffs' tardiness, Defendants have had sufficient opportunity to respond to the motions and the court has had sufficient time to consider the motions. Addi-

tionally, Defendants have not alleged or proven that Plaintiffs acted in bad faith or that Defendants would suffer prejudice if the court reviewed Plaintiffs' opposition at this time. *See United States v. Savoy,* 38 F.Supp.2d 406, 410 (D.Md.1998) (declining to bar untimely supplemental motions in the absence of showing of prejudice). Rather, Defendants were fully apprised of Plaintiffs' position by the arguments set forth in support of their motion for summary judgment. Simply stated, dismissal is a harsh remedy that should not be imposed lightly. As the court perceives no advantage to it or to the parties, and because it has not been presented with any evidence of actual prejudice, Defendants' motion to dismiss Plaintiffs' complaint for failure to respond in a timely fashion will be denied. *See United States v. Johnson,* 953 F.2d 110, 116 (4th Cir.1991) ("Motions filed out of time are accepted at the discretion of the trial court."); *Brumback v. Callas Contractors, Inc.,* 913 F.Supp. 929, 934 (D.Md.1995) (holding that "notions of judicial economy and fairness militated against" dismissing untimely motion when no prejudice suffered or shown).

### C. Plaintiffs' Motion for Summary Judgment

▮ Plaintiffs have also moved for summary judgment. Plaintiffs allege that Mr. Hayat vacated the apartment without notice prior to the expiration of his lease agreement and failed to pay rent for the months of July and August. Plaintiffs seek to recover the unpaid rent and the cost of repairs to the property. Defendants, however, argue that Mr. Hayat did in fact submit timely notice of his intent to vacate the premises. *See* paper no. 9, ex. 3. Viewing the evidence in the light most favorable to Defendants, the nonmoving party, there exists a genuine issue of material fact. Therefore, Plaintiffs' motion for summary judgment will be denied.

### III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss, or for summary judgment, will be denied in part and granted in part, and Plaintiffs' motion for summary judgment will be denied. A separate order will follow.